## 27880. COX BROADCASTING CORPORATION et al. v. COHN.

GUNTER, Justice. This appeal involves the alleged invasion of "the right to be left alone." The cause of action involved is also referred to as an invasion of the right of privacy, or the tort of public disclosure.

On August 18, 1971, the appellee's seventeen-year-old daughter was the victim of the crime of rape. Her death immediately followed. Six young men were subsequently indicted for murder and rape.

The rape and the death of the rape-victim were widely publicized immediately after the occurrence of these events. However, apparently because of a Georgia statute (Code Ann. § 26-9901) the identity of the female victim was not disclosed by any of the news media. That Georgia statute is as follows: "It shall be unlawful for any news media or any other person to print and publish, broadcast, televise or disseminate through any other medium of public dissemination or cause to be printed and published, broadcast, televised or disseminated in any newspaper, magazine, periodical or other publication published in this State or through any radio or television broadcast originating in the State the name or identity of any female who may have been raped or upon whom an assault with intent to commit rape may have been made. Any person or corporation violating the provisions of this section shall, upon conviction, be punished as for a misdemeanor."

Approximately eight months after the commission of the alleged crimes, the six young men were involved in court proceedings pursuant to the indictments returned against them. On the same day of the court proceedings, April 10, 1972, and on the following day, April 11, 1972, the appellant broadcasting company and its agent-reporter originated a telecast from the courthouse which disclosed the identity of the deceased rape-victim.

That telecast in part contained the following: "Six youths went on trial today for the murder-rape of a teenaged girl. The six Sandy Springs high school boys were charged with murder and rape in the death of seventeen year old Cynthia Cohn following a drinking party last August 18. The tragic death of the high school girl shocked the entire Sandy Springs community. Today the six boys had their day in court. There was no jury. The six boys through their lawyers, threw themselves on the mercy of the court . . . and the presiding judge, Sam Phillips McKenzie. The prosecutor, assistant Attorney General John Nuckolls said the

girl had apparently drank [sic] a considerable amount of vodka attending a private party. He said the girl was taken to a wooded area and raped. She passed out . . . and the liquids in her stomach were forced upward causing suffocation. The exact cause of death . . . that is whether the rape caused death he said would be difficult to prove. Judge McKenzie dropped the murder charge against all six . . . and proceeded with the charge of rape. The DA told the judge all six defendants wished to plead guilty . . . and not have a jury trial. The DA told the court the girl's family felt that a lenient five year sentence would serve justice and he recommended a five year sentence."

The rest of the telecast, too lengthy to quote here, dealt with the names of the young men and the sentences that they received.

On May 8, 1972, the appellee brought an action for money damages against the broadcasting company and its reporter for having invaded his right to privacy by publishing the identity of his deceased daughter in connection with the circumstances related in the telecast.

There being no material dispute about the facts, both sides filed motions for summary judgment in the trial court. The appellants' motion for summary judgment was denied, and the appellee's motion for summary judgment was granted as to liability on the part of appellants, leaving for future determination in the trial court the amount of damages recoverable by the appellee. The trial court granted a certificate for immediate review, and we must now decide whether the trial court's partial summary judgment establishing liability on the part of the appellants was correct.

We must reverse the judgment below and remand the case for further proceedings consistent with this opinion.

## I.

The trial court apparently granted summary judgment as to liability against the appellants on the theory that the Georgia statute which prohibits disclosure of the identity of a rape victim gives rise to a civil cause of action in favor of the victim and, in this case, the father of a deceased victim against the party making the disclosure; and there being no question about the disclosure in this case, the trial court determined liability to exist against the disclosing parties as a matter of law.

We disagree with the trial court on this score. This Georgia statute and its predecessor, formerly codified as Code § 26-2105, are penal in nature, and while these statutes establish the public policy of this state on this subject, neither of them created a civil

cause of action for damages in favor of the victim or anyone else.

Since we rule that the statute did not create a civil cause of action, it is unnecessary for us to consider and rule on the various constitutional attacks made on the statute by the appellants.

## II.

Aside from the statute, did the appellee's complaint filed in the trial court state a cause of action for invasion of the appellee's right to be left alone, or for the invasion of the appellee's right of privacy, or for the tort of public disclosure?

This tort, by whatever name it may be called, though relatively new in the entire history of the Common Law, has been recognized in this jurisdiction since 1905. This tort, though fathered by Messrs. Warren and Brandeis in a remarkable law review article published in 1890, was birthed by this court in *Pavesich v. New England Life Ins. Co.,* 122 Ga. 190 (50 SE 68, 69 LRA 101, 106 ASR 104, 2AC 561) (1905). See Dean Wade's article, Defamation and the Right of Privacy, 15 Vanderbilt L. Rev. 1093 (October, 1962).

Dean Prosser, in his law review article entitled Privacy in 48 California L. Rev. 383 (August, 1960), said that *Pavesich* initially recognized the existence of a distinct right of privacy and thus became the leading case on the subject. He further said in that article: "Along in the thirties, with the benediction of the Restatement of Torts, the tide set in strongly in favor of recognition, and the rejecting decisions began to be overruled. At the present time the right of privacy, in one form or another, is declared to exist by the overwhelming majority of the American courts." P. 386.

Mr. Justice Peters of the California Supreme Court in a relatively recent case, Briscoe v. Reader's Digest Assn., 4 Cal. 3d 529, 534 (483 P2d 34, 93 Cal. Rptr. 866) (1971), said: "A common law right to privacy, based on Warren and Brandeis' article, is now recognized in at least thirty-six states."

We therefore adhere to our *Pavesich* beginnings and reiterate that this common law tort exists in this jurisdiction without the help of the statute that the trial judge in this case relied on.

## III.

Does the father of a deceased minor child have a cause of action in tort by virtue of the public disclosure of the identity of his daughter as the victim of a sex crime and the unpleasant circumstances connected therewith, all of which occurred approximately eight months prior to the public disclosure of his

daughter's involvement?

It is clear that the female victim's privacy was not invaded in this case. She had been dead some eight months prior to her identity and involvement being publicly disclosed.

The surviving father of the deceased daughter asserts that the tort was perpetrated directly upon him. He contends that the public disclosure of the identity and involvement of his daughter eight months after the fact invaded his right to privacy and intruded upon his right to be left alone, free from and unconnected with the sad and unpleasant event that had previously occurred.

A cause of action asserted by a close relative is sometimes called a "relational" right to privacy. Dean Green delved into the subject of relational interests in a law review article published in 1934. 29 Illinois L. Rev. 460. The beginning paragraph of that article is as follows: "The value of the relational interest in dealing with tort cases has not been generally recognized. It has been in large measure ignored or else classified as a property interest. It deserves a place alongside of personality and property. It fills an indispensable place in tort classification." Later in the article at page 487, he said: "It is not a situation of hurting the plaintiff's personality or harming the plaintiff's property. It is, strictly speaking, a hurt to the relational interest of the plaintiff—his interest in a deceased relative—and on this basis recovery is not only warranted on behalf of a plaintiff, but is further warranted on the basis of condemning or penalizing the inconsiderate conduct of the defendant where such tender relations are involved."

See also in this connection the Note by Robert P. Kennedy entitled "The Right to Privacy in the Name, Reputation and Personality of a Deceased Relative" in 40 Notre Dame Lawyer 324 (April, 1965).

This jurisdiction is not without precedent in the "relational" area of the law. In *Bazemore v. Savannah Hospital,* 171 Ga. 257 (155 SE 194) (1930), the parents of a deceased infant with an unusual birth defect sued a hospital, a photographer, and a newspaper for invasion of their privacy by publishing, or aiding the disclosure and publication of, a photograph depicting their deformed infant. The opinion by this court said: "In this case the child was dead when the unauthorized acts were committed, and the right of action could not be in the child, but in the parents . . . The petition in this case by the parents of a deceased child for general and special damages to the plaintiffs, and for

injunction because of the alleged tortious act, set forth a cause of action." P. 262. The complaint in the case had sought money damages against all three of the defendants jointly and severally. This court held that the complaint stated a cause of action against all three defendants.

The appellants in the case at bar contend that *Bazemore* is not authority for the existence of the "relational" right in this state. They argue that the decision turned on a breach by the hospital of its contractual and ethical obligation to the parents of the infant and that the photographer and the newspaper had wilfully participated in such breach. We are not persuaded by this argument.

*Bazemore* said that the parents of the deceased infant had a cause of action against the newspaper because of its public disclosure which affected them, the parents. As we read *Bazemore,* how that public disclosure by the newspaper came about, whether by breach of contractual and ethical obligations or otherwise, was immaterial. A newspaper made a public disclosure concerning a deformed deceased infant of surviving parents. Such disclosure allegedly affected the surviving parents in an adverse manner. The surviving parents' complaint properly stated a cause of action against the newspaper.

In the case at bar we hold that the appellee's complaint properly stated a cause of action, whether it be denominated "relational" or not, against the appellants.

## IV.

Although the appellee's complaint in this case stated a claim for relief, the public disclosure, admitted by the appellants, did not establish liability on the part of the appellants as a matter of law. Whether the public disclosure actually invaded the appellee's "zone of privacy," and if so to what extent, are issues to be determined by the fact-finder. And in formulating such an issue for determination by the fact-finder, it is reasonable to require the appellee to prove that the appellants invaded his privacy with wilful or negligent disregard for the fact that reasonable men would find the invasion highly offensive.

## V.

We now turn to the head-on collision between the tort of public disclosure and First Amendment rights of freedom of speech and press. Georgia's Constitution says: "No law shall ever be passed to curtail, or restrain the liberty of speech, or of the press; any person may speak, write and publish his sentiments on all

subjects, *being responsible for the abuse of that liberty."* Code Ann. § 2-115. Georgia's Constitution also says: "Protection to person and property is the paramount duty of government, and shall be impartial and complete." Code Ann. § 2-102.

The protections to speech and press contained in the First Amendment to the Constitution of the United States are made applicable to the State of Georgia by the Fourteenth Amendment. However, despite the late Mr. Justice Black's absolutist position with regard to the First Amendment, we know that his position has never been adopted by the Supreme Court of the United States. There are a number of legitimate limitations on speech which are not proscribed by the First Amendment. These limitations are generally set forth by Professor Leflar in The Free-ness of Free Speech, 15 Vanderbilt L. Rev. 1073 (October, 1962). In that article the author discussed the freedom of speech requirement of the First Amendment, and he determined that this constitutional guarantee is not absolute. He further concluded that the court should weigh the conflicting societal values of the present day in reaching a decision as to whether the particular speech in issue is protected by the First Amendment. On page 1083 of that article Professor Leflar said: "How then do we, or should we, make our specific judgments? How do we while effectuating our ideal, or perhaps only pretending to effecuate it, pick out the situations in which free speaking will be penalized? One mass of cases is easy. Neither frauds nor perjuries nor most defamations have within them any of the social values for which our ideal demands protection. The libel or slander which seeks acceptance of no cultural, political, social or ethical attitude, which urges upon the group no controversial idea or opinion, which seeks nothing beyond private benefit to the speaker or harm to others, does not come within the ideal at all. It deserves no constitutional protection, and receives none."

The Supreme Court of Wisconsin in State v. Evjue, 253 Wis. 146 (33 NW2d 305) (1948), upheld the constitutionality of that state's statute prohibiting disclosure of the identity of a rape victim against all First Amendment attacks. Also, in Nappier v. Jefferson Standard Life Ins. Co., 322 F2d 502 (1963), the contention was made that the disclosure of a rape victim's identity was a matter of public concern and record so as to be exempted from South Carolina's non-disclosure statute and from the rule of privacy. The Fourth Circuit handled this argument

as follows: "The ready replication is that the statute states an exception to the exemption. No matter the news value, South Carolina has unequivocally declared the identity of the injured person shall not be made known in press or broadcast . . . . No constitutional infringement has been suggested. Indeed, Standard conceeded in oral argument that if the broadcast did in fact and in law 'name' the plaintiffs, then they had a right of action." P. 505.

A note in Yale Law Journal (June, 1973) makes a rather convincing argument that there is a First Amendment interest in protecting the privacy of the individual which is on a par with the First Amendment interest which permits disclosure of the identity of a person whose privacy will be invaded by such disclosure. The contention is there made that there must be a balancing by the courts of these two constitutional interests.

In Briscoe, supra, the Supreme Court of California held that a plaintiff, convicted of a crime eleven years earlier, had a claim for invasion of privacy by virtue of the disclosure of his identity eleven years after the fact. That court said: "But men are not so divine as to forgive the past trespasses of others, and plaintiff therefore endeavored to reveal as little as possible of his past life. Yet, as if in some bizarre canyon of echoes, petitioner's past life pursues him through the pages of Reader's Digest, now published in thirteen languages and distributed in 100 nations, with a circulation in California alone of almost 2,000,000 copies." Briscoe v. Reader's Digest Assn., 4 Cal. 3d 529, supra, p. 540.

The court in Briscoe then went on to say: "But the rights guaranteed by the First Amendment do not require total abrogation of the right to privacy. The goals sought by each may be achieved with a minimum of intrusion upon the other." Id., p. 541. We agree. First Amendment proscriptions do not bar the claim of the appellee against the appellants in this case.

### VI.

To conclude: The trial court correctly denied the motion of appellants for summary judgment; the trial court erroneously granted the appellee's motion for partial summary judgment; and the case is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed in part; reversed in part and remanded with direction. All the Justices concur, except Grice, P. J., Undercofler and Jordan, JJ., who dissent.*

ARGUED MAY 15, 1973 — DECIDED SEPTEMBER 5, 1973 —

*King & Spalding, Kirk McAlpin, John A. Pickins, Joseph R. Bankoff,* for appellants.

*Zachry & Land, Stephen A. Land,* for appellee.

UNDERCOFLER, Justice, dissenting. The majority opinion ignores the established rule in Georgia that "where an incident is a matter of public interest, or the subject matter of a public investigation, a publication in connection therewith can be a violation of no one's legal right of privacy." *Waters v. Fleetwood,* 212 Ga. 161, 167 (91 SE2d 344). This qualification on the public disclosure tort comports with the overwhelming majority of cases that have considered the public interest aspect of a publication. See Prosser, Law of Torts 823-833 (4th Ed. 1971); 18 ALR3d 875, 882. Indeed, the American Law Institute has recognized and approved this qualification, and has taken the position that persons who reluctantly become subjects of public interest by virtue of some "striking catastrophe" are nevertheless "subject to the privileges which publishers have to satisfy the curiosity of the public as to their leaders, heroes, villians and victims." Restatement of Torts § 867, comment c (1939).

The public interest qualification is grounded in the rights of freedom of press and speech granted in both the Georgia Constitution and the First Amendment to the Federal Constitution. In reference to these fundamental freedoms this court said in *Pavesich v. New England Life Ins. Co.,* 122 Ga. 190, 204 (50 SE 68), that "[t]he truth may be spoken, written, or printed about all matters of a public nature, as well as matters of a private nature in which the public has a legitimate interest." The constitutional freedoms of press and speech are so jealously guarded that even publication of *false* reports of matters of public interest are privileged absent a showing that the defendant "published the report with knowledge of its falsity or in reckless disregard of the truth." Time, Inc. v. Hill, 385 U. S. 374, 388 (87 SC 534, 17 LE2d 456). Certainly the publication of true information regarding a matter of public interest can be no less privileged. The constitutional privilege is controlling regardless of whether recovery would be predicated on violation of statute, or on some theory akin to negligence per se with the statute providing the duty or standard of care owed the plaintiff, or, as the majority would have it, on the basis "that reasonable men would find the invasion

highly offensive."

I am authorized to state that Presiding Justice Grice and Justice Jordan concur in this dissent.

## ON MOTION FOR REHEARING.

GUNTER, Justice. The appellants have filed a motion for rehearing in which they contend that their motion for summary judgment in the trial court should have been granted because the public disclosure or publication in this case was a matter of public interest or general concern.

This argument overlooks the fact that the 1968 statute (Code Ann. § 26-9901) enacted by the Georgia Legislature declared that the identity of a female victim of the crime of rape shall not be disclosed by the news media. In the original opinion we held that this statute established the public policy of Georgia on this subject. This statute does not prevent disclosure or publication of "the event"; it merely prohibits the disclosure or publication of the identity of the victim of the event.

Implicit, though not explicit, in the appellants' argument is that this court should declare this 1968 statute unconstitutional as violative of the First Amendment.

A majority of this court does not consider this statute to be in conflict with the First Amendment. We think the General Assembly of Georgia had a perfect right to declare that the victim of such a crime should not be publicly identified by the news media. The First Amendment is not absolute; and we consider this statute to be a legitimate limitation on the right of freedom of expression contained in the First Amendment.

There simply is no public interest or general concern about the identity of the victim of such a crime as will make the right to disclose the identity of the victim rise to the level of First Amendment protection.

No case has been cited to us, and we have found none, declaring such a statute to be unconstitutional. To the contrary, the Supreme Court of Wisconsin in State v. Evjue, 253 Wis. 146, 161 (33 NW2d 305), cited in the majority opinion, said: "It is considered that there is a minimum of social value in the publication of the identity of a female in connection with such an outrage. Certain it is that the legislature could so find. At most the publication of the identity of the female ministers to a morbid desire to connect the details of one of the most detestable crimes known to the law with the identity of the victim. When the situation of the victim of the assault and the handicap prosecuting officers labor under in such

cases is weighed against the benefit of publishing the identity of the victim in connection with the details of the crime, there can be no doubt that the slight restriction of the freedom of the press prescribed by sec. 348.412, Stats., is fully justified. We find no ground upon which sec. 348.412, Stats., may be held invalid."

We hold that this 1968 Georgia statute is not unconstitutional, and because of this statute the disclosure of the identity of the victim of such a crime is not a matter of public interest and general concern in this state.

*Motion denied.*