A91A1240. CECHMAN et al. v. TRAVIS et al.
A91A1241. TRAVIS v. CECHMAN et al.
A91A1242. HOSPITAL AUTHORITY OF GWINNETT COUNTY et al. v. CECHMAN et al.
A91A1243. GWINNETT EMERGENCY CONSULTANTS, INC. v. CECHMAN et al.
(414 SE2d 282)

CARLEY, Presiding Judge.

The relevant facts in the instant appeals are as follows: After Ms. Mary Cechman discovered three red marks on the chest of her month-old daughter, she sought medical treatment for the child at the emergency room of Gwinnett Medical Center. There, the child was examined by Dr. Tracy Travis. Ms. Cechman feared that the child's father had struck the child. When she was questioned by Dr. Travis, however, Ms. Cechman stated that the child had not been subjected to any trauma and she asked Dr. Travis whether the red marks might not possibly be bite marks that had been made by another of her young children. Dr. Travis ordered no X-rays, but merely prescribed a pain reliever for bruises. One month later, the child was killed by her abusive father.

After the child's death, Ms. Cechman and the administratrix of the child's estate brought the instant action, wherein they alleged various tort claims against Dr. Travis, Gwinnett Emergency Consultants, Inc. (GECI) and the Hospital Authority of Gwinnett County (Hospital). After discovery, Dr. Travis, GECI and the Hospital moved for summary judgment and the trial court granted the motions as to some, but not as to all, of the claims. The instant appeal and cross-appeals are taken from the trial court's order on the motions for summary judgment.

*Case No. A91A1240*

1. One of the claims was premised upon OCGA § 19-7-5, which provides, in relevant part, that a licensed physician "having reasonable cause to believe that a child has been abused shall report or cause

reports of that abuse to be made" and that such a physician "who knowingly and willfully fails to do so shall be guilty of a misdemeanor." It was alleged that Dr. Travis had violated this criminal statute and that this violation had ultimately resulted in the death of the child. As to this claim premised upon an alleged violation of OCGA § 19-7-5, the trial court granted summary judgment and that ruling is enumerated as error.

" '(T)he violation of a penal statute does not automatically give rise to a civil cause of action on the part of one who is injured thereby.' [Cit.]" *Oswald v. American Nat. Can Co.*, 194 Ga. App. 882, 883 (392 SE2d 26) (1990). "[W]hile [OCGA § 19-7-5] establish[es] the public policy of this state on [the] subject [of reporting suspected child abuse, it does not expressly create] a civil cause of action for damages in favor of the victim or anyone else." *Cox Broadcasting Corp. v. Cohn*, 231 Ga. 60, 61-62 (I) (200 SE2d 127) (1973), rev'd on other grounds, 420 U. S. 469 (95 SC 1029, 43 LE2d 328) (1975). Other jurisdictions with statutory provisions that are comparable to OCGA § 19-7-5 have held that no private cause of action is impliedly created thereby. See *Fischer v. Metcalf*, 543 S2d 785, 790 (4) (Fla. App. 1989) (holding that, "[w]ithout question, the legislature intends that . . . protection be provided through increased supervision and regulation by [other agencies], rather than through implication of a private remedy"). Likewise, there would appear to be "nothing within [the] provisions of [OCGA § 19-7-5 which] purports to create a private cause of action in tort in favor of an alleged victim [of child abuse]." *Rolleston v. Huie*, 198 Ga. App. 49, 50 (2) (400 SE2d 349) (1990) (construing OCGA § 16-8-16). See also *Sparks v. Thurmond*, 171 Ga. App. 138, 142 (5) (319 SE2d 46) (1984) (construing OCGA § 35-3-38).

Moreover, even assuming that OCGA § 19-7-5 did create a private cause of action in tort, no viable claim would exist in the instant case. The statute requires that notice be given only by those physicians "*having* reasonable cause to believe that a child has been abused" and it penalizes only those physicians "who *knowingly and willfully*" fail to do so. (Emphasis supplied.) It does *not* require that notice be given by those physicians "who should have had reasonable cause" to suspect child abuse and it does *not* penalize those physicians "who fail to discover and report" suspected instances of child abuse. There is no allegation or evidence that Dr. Travis *had* reasonable cause to believe that the child was a victim of child abuse and that she *knowingly and willfully* failed to report that suspicion. The only contention is that *if* Dr. Travis had conducted the examination of the child differently, she would *then* have had the requisite reasonable cause to suspect child abuse and would *then* have been required to report her suspicion in that regard. OCGA § 19-7-5 clearly does not purport to establish the *actual* discovery of reportable suspected

child abuse as a standard of medical conduct. Compare *Central Anesthesia Assoc., P. C. v. Worthy*, 173 Ga. App. 150 (325 SE2d 819) (1984) (holding that the provisions of OCGA § 43-26-9 regarding the administering of anesthesia are intended to establish the standard of medical conduct, a deviation from which constitutes negligence per se). OCGA § 19-7-5 merely mandates the reporting of suspected child abuse by a physician "having reasonable cause to believe that [the] child has been abused. . . ."

Under the undisputed evidence of record, no genuine issue of material fact remains as to the claim premised upon OCGA § 19-7-5 and the trial court correctly granted summary judgment as to that claim.

2. The trial court also granted summary judgment as to the claim for the death of the child which was predicated upon common law medical malpractice. This ruling is enumerated as error.

" 'Before negligence can be predicated upon a given act, some duty to the individual complaining must be sought and found, the observance of which duty would have averted or avoided the injury or damage. . . .' [Cit.]" *Porch v. Wright*, 116 Ga. App. 138 (1) (156 SE2d 532) (1967). " 'No matter how innocent the plaintiff may be, he is not entitled to recover unless the defendant did something that [he] should not have done, or failed to do something that [he] should have done pursuant to the duty owed the plaintiff.' [Cit.]" *Veterans Organization of Fort Oglethorpe v. Potter*, 111 Ga. App. 201, 205 (2) (141 SE2d 230) (1965). As a physician, Dr. Travis had a legal duty to "bring to the exercise of [her] profession a reasonable degree of care and skill. Any injury resulting from a want of such care and skill, [would] be a tort for which a recovery may be had." OCGA § 51-1-27. Accordingly, Dr. Travis had a legal duty to afford the child non-negligent medical treatment and an injury to the child proximately resulting from a breach of that legal duty would be actionable.

Dr. Travis was called upon to exercise her professional skills because of the discovery of three red marks on the child's chest. However, there is no contention that the child died as the result of any treatment that was afforded by Dr. Travis for that particular medical condition. The only contention is that Dr. Travis failed to discover and report that the *ultimate non-medical source* of the child's medical condition was suspected child abuse, with the result that the child was not removed from her home and was *subsequently* killed by her abusive father. Thus, the immediate instrumentality of the child's death was her own abusive father, not the particular medical condition which Dr. Travis had been called upon to treat. The contention is, therefore, that Dr. Travis owed not only a common law legal duty to afford non-negligent treatment of the child's immediate medical condition, but also owed a common law legal duty to discover and report the non-medical source of the child's medical condition so as to

prevent her subsequent reinjury by her abusive father.

"Generally, a person does not have a duty to control the conduct of another person, who is a potential tortfeasor, so as to prevent that person from harming a third person ([cit.]), unless '(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection.' [Cit.]" *Associated Health Systems v. Jones*, 185 Ga. App. 798, 801 (1) (366 SE2d 147) (1988). There was obviously no "special relationship" between Dr. Travis and the child's abusive father which imposed a duty upon the former to control the latter's conduct. Compare *Bradley Center v. Wessner*, 161 Ga. App. 576 (287 SE2d 716) (1982), aff'd 250 Ga. 199 (296 SE2d 693) (1982). Accordingly, unless there was a "special relationship" between Dr. Travis and the child by which the latter acquired a right to be protected by the former from future harm at the hands of her abusive father, there would be no viable claim in the instant case.

The only relationship between Dr. Travis and the child was that of physician-patient. As a consequence of that relationship, the child had the right to non-negligent treatment of her medical condition and the state had the right to be notified if Dr. Travis had reasonable cause to believe that the underlying non-medical source of the child's medical condition was child abuse. As noted, however, Dr. Travis, in her capacity as a physician, breached no legal duty, even to the state, by failing to discover and report a case of possible child abuse. Compare *Central Anesthesia Assoc., P.C. v. Worthy*, supra (holding that physicians have a legal duty to comply with the provisions of OCGA § 43-26-9 when administering anesthesia to their patients). " 'As a general rule, where the injury is not due to the fault of the person to be charged, the fact that a person sees another who is injured does not, of itself, impose on him any legal obligation to afford relief or assistance, but he may have a strong moral and humanitarian obligation to do so.' [Cit.]" *Handiboe v. McCarthy*, 114 Ga. App. 541, 543 (4) (151 SE2d 905) (1966). OCGA § 19-7-5 may change this common law rule to the extent of imposing upon the physician, *who has reasonable cause to believe that a child has been abused*, a legal duty to the *state* to report that suspicion. OCGA § 19-7-5 does *not*, however, change that common law rule by imposing upon the physician, *who merely failed to discover and report suspected child abuse*, a legal liability to the *child* for future acts of child abuse.

If anyone had a duty to protect the child from her abusive father, it was Ms. Cechman, who had at least the *moral* duty, as a parent, to do so. If she suspected that the child's father was abusive, she could have reported it to the proper authorities or she could have voiced her suspicions to Dr. Travis. That there may have been a default in Ms.

Cechman's performance of her moral duty as a parent is not a basis for imposing a legal duty upon Dr. Travis to protect the child from her abusive father. The undisputed evidence of record shows that the death of the child was not the proximate result of the breach of any legal duty owed by Dr. Travis as the child's physician. Accordingly, no genuine issue of material fact remains as to the claim for common law malpractice and the trial court correctly granted summary judgment as to that claim.

## Case No. A91A1241

3. Although the trial court granted summary judgment as to the claims for the death of the child, it denied summary judgment as to claims for any other instances of child abuse which may have occurred after Dr. Travis' examination of the child and before the child was killed. Dr. Travis cross-appeals from the denial of her motion for summary judgment as to these claims.

As previously held, Dr. Travis' alleged failure to discover and report that the child was a suspected victim of child abuse affords no legal basis for the recovery of damages for future injuries that the child may have suffered at the hands of her abusive father. Insofar as Dr. Travis' liability is concerned, there is no legal rationale for distinguishing between that particular subsequent act of child abuse which resulted in the death of the child and any other non-fatal act of subsequent child abuse. Dr. Travis owed the child no greater legal duty to protect her from future non-fatal acts of child abuse than she did to protect the child from that future act of child abuse which resulted in her death. Accordingly, the trial court erred in failing to grant summary judgment in favor of Dr. Travis as to *any and all* claims predicated upon the allegations of the complaint that the child had suffered "excruciating pain and suffering during [the] periods of child abuse . . . occurring subsequent to [the examination by Dr. Travis, including], but . . . not limited to, the final episode of child abuse. . . ."

## Case Nos. A91A1242 and A91A1243

4. GECI and the Hospital also cross-appeal from the denials of their motions for summary judgment as to claims premised upon non-fatal instances of child abuse occurring subsequent to Dr. Travis' examination.

A recovery as against GECI and the Hospital on these claims would be based solely on the theory that they are vicariously liable for the alleged negligence of Dr. Travis in failing to discover and report that the child was a suspected victim of child abuse. As previously held, Dr. Travis was herself entitled to summary judgment as to

these claims. Accordingly, the trial court erred in failing to grant summary judgment in favor of GECI and the Hospital. "Where the liability of a party is premised solely upon his vicarious liability for the tortious actions of an agent and judgment is entered for the agent, the party alleged to be vicariously liable is also entitled to judgment. (Cits.]" *Kornegay v. Mundy*, 190 Ga. App. 433, 435 (2) (379 SE2d 14) (1989).

*Judgment affirmed in Case No. A91A1240. Judgments reversed in Case Nos. A91A1241, A91A1242, and A91A1243. Beasley, J., and Judge Arnold Shulman concur.*

DECIDED DECEMBER 2, 1991 —
RECONSIDERATION DENIED DECEMBER 12, 1991 —

*Chambers, Mabry, McClelland & Brooks, Walter B. McClelland, Eugene C. Bessent, Fletcher W. Griffin III*, for Cechman.

*Lokey & Bowden, Malcolm Smith*, for Travis.

*Long, Weinberg, Ansley & Wheeler, Glenn E. Kushel, Roger Mills*, for Hospital Authority of Gwinnett County.

*Sullivan, Hall, Booth & Smith, Alexander H. Booth, David V. Johnson*, for Gwinnett Emergency Consultants.