A95A0077. RICE et al. v. DELTA AIR LINES, INC.
A95A0078. FITZGERALD et al. v. DELTA AIR LINES, INC.
(458 SE2d 359)

ANDREWS, Judge.

Rice, Fitzgerald, and their wives appeal from the grant of summary judgment to Delta Air Lines, Inc. (Delta) in Rice and Fitzgerald's suits for personal injuries and their wives' derivative claims for loss of consortium.

1. "To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. . . . A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a [genuine] jury issue on at least one essential element of plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. [Cit.] A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Viewing the affidavits and depositions with all inferences in favor of plaintiffs, *Eiberger v. West*, 247 Ga. 767, 769 (1) (281 SE2d 148) (1981), the facts are that Rice and Fitzgerald were employed as sheet metal workers for Crown Corr, Inc. (Crown). Delta had contracted with Crown for the "reskinning" of the Technical Operations Center II (TOC II), a large hangar used by Delta for servicing airplanes.

Section 4.1 of the General Conditions of the contract provides that "[t]he Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be *solely responsible* for all construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the contract." (Emphasis supplied.) Section 4.2 states that "[u]nless otherwise specifically provided in the Contract Documents, the Contractor shall provide and pay for all . . . equipment, tools, construction equipment and machinery, . . . necessary for the proper execution and completion of the Work, whether temporary or permanent. . . ."

Section 10.1 states that Crown "shall be responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the Work. The Contractor shall take all reasonable

precautions for the safety of, and shall provide all reasonable protection to prevent . . . injury or loss to (1) all employees on the Work. . . ."

Crown employees constructed a rolling tubular scaffolding for use on the project. The base of the scaffolding was a "farm wagon," a wagon chassis with four rubber wheels. As described by Beatty, plaintiffs' expert, the scaffolding was "side-loaded with pick boards and side mounted brackets which affected the center of gravity of the scaffold. It had one set of outriggers with screwjacks located on the side opposite of the pick boards." The scaffold was approximately five feet wide, twenty feet long, and thirty-five feet high. When the scaffolding was in use, it would be placed against the side of TOC II where the work was being conducted and the outriggers engaged so that the scaffolding was braced against the building. As opined by Beatty, "this scaffold was destined to fall given its configuration, its imbalance, and the fact that nothing was provided to assure its stability. This scaffold would have tipped or fallen whether or not it was tied to the hangar or left free standing away from the hangar. . . . [I]t was just as likely that the scaffold would have fallen with or without a gust or force of wind."

During this project, Delta continued to service airplanes in the hangar. When a plane had to be moved in or out of the hangar, Delta would request Crown to move the scaffolding if it interfered with the plane's being moved.

Sometime during Delta's evening shift at TOC II on September 18, 1991, a hangar door was being closed and damaged the scaffolding. It was not reported that evening but when Oswalt, Crown's field superintendent, arrived for work the next morning, he noticed the damage and reported it to Delta which assumed responsibility for the damage. Delta did not pay for the repairs but did offer to pay for them if Crown "felt it necessary." No request was made by Crown for payment.

The scaffold was being repaired by Crown employees over the next two days. On September 20, Hornsby, Delta's lead mechanic, asked the Crown crew to roll the scaffold away from the hangar doors so Delta could move a jet. The scaffold was rolled onto the ramp outside the hangar by Crown employees and the jet was being backed out. This was done by a mechanized cart pushing the plane from the front. The engines of the plane were not operating.

The Delta employees watching the jet's wingtips heard screaming and the scaffold fell onto its unbraced side with Rice and Fitzgerald hooked to the upper level by their safety harnesses. They had been working on repairing the scaffold and had climbed back to the top of the scaffold after it was moved. Both men were severely and permanently injured.

Crown was cited and fined by OSHA as a result of the accident.

2. Plaintiffs contend that the court erred in granting Delta's motion for summary judgment because, pursuant to OCGA § 51-2-5 (2) and (4), Delta was liable for its independent contractor's[1] negligence on two bases: 1) the work was "in its nature dangerous to others however carefully performed" or 2) that the wrongful act of improperly constructing and repairing the scaffold was a violation of a duty imposed by OCGA § 34-1-1 (a) (1).

(a) Considering the latter first, OCGA § 34-1-1 (a) (1) requires that all scaffolding over 30 feet high have a safety rail and that "[s]uch scaffolding or staging shall also be so fastened as to prevent it from swaying from the building or structure." It is "unlawful for any person to employ *or direct* others to perform labor of any kind in the . . . , repairing, [or] altering . . . , of a building or other structure without first having furnished proper protection to such person so employed or directed, as provided in paragraph (1). . . ." (Emphasis supplied.) Violation of the statute is a misdemeanor. OCGA § 34-1-1 (d).

Plaintiffs contend that Delta is responsible because it "directed" Crown employees to perform labor without furnishing proper protection with regard to the scaffolding. Even assuming, without deciding, that a civil cause of action can be provided by violation of this penal statute,[2] the statute on its face applies only to one who directs another to work on a *building or structure* without a proper scaffold. Here, at the time Delta made its request that the scaffold be moved, no work was being done on the structure by Rice and Fitzgerald because of the damage to the scaffold. Work was being performed on the scaffold itself. Therefore, this statute provides no basis for Delta's liability.

(b) In order for OCGA § 51-2-5 (2) to apply, the work must be "in its nature dangerous to others *however carefully performed*." (Emphasis supplied.)

There was no evidence that all work on all scaffolding is inherently dangerous. The evidence put forward by plaintiffs was that this particular scaffold had been improperly constructed by Crown and was inherently dangerous. "Therefore, plaintiff[s] failed to establish that the work was dangerous 'however carefully performed.' Where the work is not inherently dangerous except as a result of the negli-

---

[1] As reflected by the portions of the contract, supra, Crown was an independent contractor regarding reskinning TOC II. *Green v. Moreland*, 200 Ga. App. 167 (1) (407 SE2d 119) (1991).

[2] But see in this regard *Cox Broadcasting Corp. v. Cohn*, 231 Ga. 60, 61-62 (I) (200 SE2d 127) (1973), rev'd on other grounds, 420 U. S. 469 (95 SC 1029, 43 LE2d 328) (1975), and *Cechman v. Travis*, 202 Ga. App. 255, 256 (1) (414 SE2d 282) (1991).

gence of the contractor the employer is not liable. [Cit.]" *Mason v. Gracey*, 189 Ga. App. 150, 153 (1) (b) (375 SE2d 283) (1988) (use of a blowtorch to remove paint from wood is not inherently dangerous).

Working on scaffolding can be done safely, as reflected by OCGA § 34-1-1. See *Green v. Moreland*, supra (work on a bridge could have been done safely except for the contractor's placing a crane too near high-voltage electrical lines).

Therefore, summary judgment was properly granted to Delta.

3. Our decision in Division 2 makes unnecessary consideration of the remaining enumerations of error.

*Judgments affirmed in Case Nos. A95A0077 and A95A0078. Mc-Murray, P. J., and Blackburn, J., concur.*

DECIDED APRIL 27, 1995 —
RECONSIDERATIONS DENIED MAY 18, 1995 — 

*Barnes, Browning, Tanksley & Casurella, Roy E. Barnes, Jeffrey G. Casurella, Hamil & Dickinson, R. Timothy Hamil, David L. Dickinson*, for appellants.
*Dermer & Black, Stephen F. Dermer*, for appellee.