A97A1586. VANCE et al. v. T. R. C. et al.
A97A1587. BABY BOY C. v. VANCE et al.
(494 SE2d 714)

BEASLEY, Judge.

T. R. C., a minor, brought an action against Dr. Luther Vance, Jr. and his professional corporation for damages arising from his failure to report T. R. C.'s herpes as sexual abuse under OCGA § 19-7-5. T. R. C. subsequently became pregnant and bore a baby boy, who also filed suit against Vance to recover for his stigma of illegitimacy. The trial court granted Vance summary judgment on the baby's claims, but denied summary judgment on T. R. C.'s claims. All claims were subject to summary judgment.

Following an accident incapacitating her mother, T. R. C. and her siblings were placed with Mr. and Mrs. Anderson for foster care in 1985. When T. R. C. turned nine, Mr. Anderson began fondling her,

and when she turned twelve, he began having sexual intercourse with her. Open lesions appeared in her perineal area, and on September 14, 1993, Mrs. Anderson took T. R. C. (then age 13) to Vance for treatment.

Vance clinically diagnosed her ailment as genital herpes, a sexually-transmitted disease. Although the testimony conflicts as to what conversations occurred during this visit, it is undisputed Vance asked Mrs. Anderson whether T. R. C. was sexually active. Mrs. Anderson claims she responded she knew of no sexual activity. It is undisputed that Dr. Vance informed T. R. C. she had contracted the disease through sexual contact. Despite his insistence that he knew she was having sex, and despite his repeated inquiries as to when she had last had sex, T. R. C. adamantly denied any sexual experiences.

She claims that eventually she told the doctor she had had sex the previous March (just before her thirteenth birthday), but she did not disclose the identity or age of the male. Vance prescribed medication to treat the herpes and had his office schedule a follow-up appointment for the next week. Mrs. Anderson, who does not remember whether the second appointment was ever made, did not bring T. R. C. back for any follow-up care, and Vance did not have his office call Mrs. Anderson to reschedule the missed appointment. The medication cured the lesions within a week.

Vance did not report the herpes to any public agency, nor did he report sexual abuse to any child welfare agencies. According to his testimony, he believed the herpes arose from consensual sexual activity with peers because his experience taught him that a certain percentage of the 13-year-old population engages in consensual sexual activity. Also, he testified that when he asked Mrs. Anderson about T. R. C.'s sexual activity, she responded T. R. C. had been escaping through her bedroom window at night. Mrs. Anderson denies she told this to Vance, but she did suspect T. R. C. of having sex with her peers prior to the visit to Vance. T. R. C. denies any sexual activity outside of Mr. Anderson.

Eight months after the visit to Vance, T. R. C. became pregnant by Mr. Anderson, resulting in the birth of Baby Boy C. He has been adopted by another family.

### Case No. A97A1586

T. R. C. alleges three grounds for her claims of negligence against Vance: (1) he breached the statutory duty imposed on him in OCGA § 19-7-5 to report she was being sexually abused; (2) he breached a common law duty to report and prevent the sexual abuse; (3) he breached the duty imposed by OCGA § 31-12-2 to report her herpes to the health department. The injury alleged is that had Vance made

the required reports, sexual abuse would have ceased and the pregnancy would have been prevented.

1. OCGA § 19-7-5 requires a physician who has reasonable cause to believe a child has been abused to report the abuse to a child welfare agency. Although abuse includes inducing or coercing a minor to engage in sexual activity, it does not include "consensual sex acts involving persons of the opposite sex when the sex acts are between minors." OCGA § 19-7-5 (b) (3.1). This exception became effective July 1, 1993. Ga. L. 1993, p. 1695, § 1; OCGA § 1-3-4 (a). A knowing and wilful failure to make a mandated report of abuse is a misdemeanor. OCGA § 19-7-5 (h).

(a) Even if Vance violated this statute, the court in *Cechman v. Travis*, 202 Ga. App. 255, 256 (1) (414 SE2d 282) (1991), held this statute does not create a civil cause of action in favor of the abused child. *Cechman* affirmed summary judgment in favor of the physician.

T. R. C. urges us to overrule *Cechman*, arguing that the rationale for refusing to interpret criminal statutes to create civil causes of action is similar to the waning rationale for the public duty doctrine. Under this doctrine, a municipality cannot be sued for the negligent performance of its duties owed to the public at large, unless there is a special relationship between the individual and the municipality giving rise to a special duty owed to that particular individual. *City of Rome v. Jordan*, 263 Ga. 26, 27-29 (1) (426 SE2d 861) (1993). Recently, the Supreme Court of Georgia clarified that this immunity applies only to the performance of police protection. See *Hamilton v. Cannon*, 267 Ga. 655, 656 (1) (482 SE2d 370) (1997); *Dept. of Transp. v. Brown*, 267 Ga. 6, 8-9 (3) (471 SE2d 849) (1996).

Regardless of whether *Brown* and *Hamilton* "undermine" the rationale for the public duty doctrine, *Cechman*'s holding that OCGA § 19-7-5 does not create a civil cause of action had nothing to do with *Jordan*'s public duty doctrine or its rationale. The decision in *Jordan* "was directed squarely and only at the duty owed by a governmental entity to provide police protection to individual citizens." *Brown*, supra, 267 Ga. at 8. A private physician's duty to report child abuse is not analogous.

*Cechman* paraphrased *Cox Broadcasting Corp. v. Cohn*, 231 Ga. 60, 61-62 (I) (200 SE2d 127) (1973), rev'd on other grounds, 420 U. S. 469 (95 SC 1029, 43 LE2d 328) (1975), which did not find in the penal statutes there at issue the creation of any civil cause of action for damages. This rationale, which is independent of the public duty doctrine, remains extant, as illustrated by the post-*Cox* cases cited in *Cechman*.

It is true that the legislature expressly provided that the reporting statute be liberally construed to effect its humane child protec-

tion purposes. OCGA § 19-7-5 (a). It imposes a duty on an extensive list of persons who, in the practice of their professions, are likely to discover evidence of child abuse. Good faith reporting of a belief that a child is abused is declared immune from civil (or criminal) liability, OCGA § 19-7-5 (f), but nothing within the provision of the law purports to create, or indicates an intention to create, a private cause of action in tort in favor of a child whose abuse is not detected or reported. Cf. *Rolleston v. Huie*, 198 Ga. App. 49, 50 (2) (400 SE2d 349) (1990) (same analysis regarding OCGA § 16-8-16); *Doyle Dickerson Co. v. Durden*, 218 Ga. App. 426, 428 (461 SE2d 902) (1995) (nothing in criminal statute makes explicit provision for creation of private right; violation of penal statute does not automatically give rise to civil cause of action). The focus is on the positive act of reporting; it is encouraged, nay compelled, on pain of criminal penalty on the one hand and on immunity from civil liability on the other hand. Nothing is said about civil liability for the failure to report, i.e., inaction.

The purpose of the statute is "to prevent further abuses, to protect and enhance the welfare of these children, and to preserve family life wherever possible." OCGA § 19-7-5 (a). It is not, therefore, to provide monetary damages to the injured child from a care provider who is not even remotely the cause of the abuse. See *Shaw v. Cook County Fed. &c. Assn.*, 139 Ga. App. 419, 421 (228 SE2d 326) (1976) (private right of action not implied in statute because not in furtherance of statute's purpose). The question of legislative intent must be resolved in this instance, as in *Tingle v. Arnold, Cate & Allen*, 129 Ga. App. 134, 137 (3) (199 SE2d 260) (1973), by concluding that "the legislature did not intend to create a private cause of action by the statute."

The ramifications of creating a tort liability must be weighed against the consequences of resultant potential over-reporting. This is a legislative task which either has been fulfilled by the choice for criminal law liability instead, or has yet to be done if and when the legislature determines to undertake it.

(b) Assuming OCGA § 19-7-5 did create a private cause of action in tort, no viable claim would exist in this case. *Cechman* states that the "statute requires that notice be given only by those physicians 'having reasonable cause to believe that a child has been abused' and it penalizes only those physicians 'who knowingly and willfully' fail to do so. It does not require that notice be given by those physicians 'who should have had reasonable cause' to suspect child abuse and it does not penalize those physicians 'who fail to discover and report' suspected instances of child abuse." (Emphases omitted.) 202 Ga. App. at 256.

In *Cechman* the physician found three red marks on the chest of the child. The parent was vague as to the cause of the injury. Experts

testified that the physician should have ordered X-rays, which would have shown evidence of trauma indicating child abuse. "The only contention is that if [the doctor] had conducted the examination of the child differently, she would then have had the requisite reasonable cause to suspect child abuse and would then have been required to report her suspicion in that regard. OCGA § 19-7-5 clearly does not purport to establish the actual discovery of reportable suspected child abuse as a standard of medical conduct." (Emphases omitted.) Id. at 256-257.

Just as the injury in *Cechman* could have been caused by trauma not associated with child abuse, T. R. C.'s herpes reasonably could have been caused by consensual sexual contact with peers, which under the statute does not constitute reportable abuse. OCGA § 19-7-5 (b) (3.1). The evidence is uncontroverted that Vance subjectively believed this was the cause of her herpes. Even if her herpes did result from abuse, such is insufficient grounds to hold Vance violated the statute by not discovering it through further investigation. "OCGA § 19-7-5 merely mandates the reporting of suspected child abuse by a physician 'having reasonable cause to believe that (the) child has been abused. . . .' " 202 Ga. App. at 257. The law draws a line between intervention and interference.

T. R. C. argues that based on her experts' affidavits the presence of herpes in a child of 13 was in itself reasonable grounds to suspect child abuse. Yet similar testimony submitted in *Cechman* relative to the three red marks treated by the physician was insufficient to create a duty. It is undisputed that reasonable non-abusive explanations existed for the symptoms in both T. R. C. and the Cechman child, and that Vance's previous experience in delivering twins to a 13-year-old, as well as other evidence of consensual sex among this age group, gave him substantial reason not to conclude there was abuse indicated here. He could not be expected to speculate that abuse is occurring and to report it at the risk of being accused of not acting in good faith. See OCGA § 19-7-5 (f). We have no basis to impose a higher standard of reporting than established in OCGA § 19-7-5, a violation of which requires a knowing and wilful refusal by the physician to report. The court erred in denying summary judgment on the OCGA § 19-7-5 claim.

2. Summary judgment was also warranted on the claim for common law medical malpractice. To establish liability, T. R. C. must show Vance breached "a legal duty to afford [her] non-negligent medical treatment and an injury to [her] proximately resulting from a breach of that legal duty would be actionable." *Cechman*, 202 Ga. App. at 257.

Vance was called upon to exercise his professional skills to treat T. R. C.'s lesions, which he successfully did. There is no contention

that her subsequent pregnancy and abuse resulted from Vance's treatment of that particular condition, and the physician was not responsible to determine why the patient failed to keep the follow-up appointment. See *Ward v. Emanuel County Bd. of Health*, 218 Ga. App. 382, 384 (461 SE2d 559) (1995). As in *Cechman*, "[t]he only [other] contention is that [Vance] failed to discover and report that the ultimate non-medical source of the child's medical condition was suspected child abuse, with the result that the child was not removed from her home and was subsequently [impregnated] by her abusive father. Thus, the immediate instrumentality of the child's [pregnancy] was her own abusive father, not the particular medical condition which [Vance] had been called upon to treat. The contention is, therefore, that [Vance] owed not only a common law legal duty to afford non-negligent treatment of the child's immediate medical condition, but also owed a common law legal duty to discover and report the non-medical source of the child's medical condition so as to prevent her subsequent reinjury by her abusive father." (Emphases omitted.) Id. at 257-258.

As stated in *Cechman*, " '[g]enerally, a person does not have a duty to control the conduct of another person, who is a potential tortfeasor, so as to prevent that person from harming a third person, unless "(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection." ' " (Citations and punctuation omitted.) Id. at 258.

There was no "special relation" of control between Vance and Mr. Anderson, whose only connection was a physician-client relationship (and even then Mr. Anderson had not seen Vance for over a year) and an independent contractor relationship whereby Mr. Anderson cleaned Vance's medical office twice a week after hours. Neither relationship gave Vance any control over Mr. Anderson's behavior toward T. R. C. See *Bradley Center v. Wessner*, 250 Ga. 199, 201-202 (296 SE2d 693) (1982); *Keppler v. Brunson*, 205 Ga. App. 32 (421 SE2d 306) (1992) ("physician must have control over the . . . patient").

Nor was there a special relation between Vance and T. R. C. by which she acquired a right to be protected by Vance from harm by Mr. Anderson. *Cechman* held that the physician-client relationship gives one only the right to non-negligent treatment of the medical condition and does not impose "upon the physician, who merely failed to discover and report suspected child abuse, a legal liability to the child for future acts of child abuse." (Emphases omitted.) 202 Ga. App. at 258. The physician was entitled to summary judgment on this ground as well.

3. The foundation of the third ground, OCGA § 31-12-2, requires

diseases designated by the Department of Human Resources to be reported. In 1993, herpes was one of the diseases. Uncontroverted testimony from a representative of the department established that "Public Health Intervention was not carried out for these cases, either for the patient who had or was suspected of having herpes, or said patient's suspected sex partners." The department would not have contacted the patient, the police, or the Department of Family & Children Services, which oversees foster care. The reporting was purely for statistical purposes, and as of 1996 herpes was removed from the list. Vance's failure to report the disease under this statute did not cause any injury to T. R. C. Summary judgment as to all grounds is mandated.

### Case No. A97A1587

4. Baby Boy C.'s grandmother, Lucille Harris, brought a claim on his behalf as his grandmother and next friend, for injuries arising from his being born as an illegitimate child, conceived in the rape of a child. As grandmother, she lacks standing because he has been adopted and therefore her legal relationship as grandmother has been terminated. OCGA § 19-8-19 (a) (1). But any person appointed or recognized by the court may serve as next friend. *Sanders v. Hilton*, 171 Ga. 702, 707 (2) (156 SE 812) (1931).

Standing or no, the claim is not cognizable under Georgia law. There is no cause of action based on parentage or circumstances of conception. Related to this issue is *Atlanta Obstetrics &c. Group v. Abelson*, 260 Ga. 711, 713 (398 SE2d 557) (1990). It held that an action brought on behalf of an impaired child alleging that, but for negligent treatment, the child would never have been born, is an action for "wrongful life" and does not state a claim. See *Gale v. Obstetrics &c. of Atlanta*, 213 Ga. App. 614, 615 (1) (445 SE2d 366) (1994). The Supreme Court quoted in *Abelson*: "Whether it is better never to have been born at all than to have been born with even gross (impairments) is a mystery more properly left to the philosophers and theologians. Surely the law can assert no competence to resolve the issue, particularly in view of the very nearly uniform high value which the law and mankind has placed on human life, rather than its absence. . . . Simply put, a cause of action brought on behalf of an infant seeking recovery for wrongful life demands a calculation of damages dependent upon a comparison between the Hobson's choice of life in an impaired state and nonexistence. This comparison the law is not equipped to make. [Cit.]" *Abelson*, 260 Ga. at 714, fn. 4.

Baby Boy C.'s efforts to distinguish his claim from a "wrongful life" action fail. He claims that he is happy to be alive but simply unhappy with his societally-imposed illegitimate status. The act that

gave him life concomitantly made him illegitimate. As conceded in the complaint, had Vance alerted authorities and had T. R. C. been removed from the Anderson home before Baby Boy C.'s conception, he would not have been born, illegitimate or otherwise. The jury would be required to compare his life as an illegitimate child to nonexistence. "An action brought by a child against the . . . physician on the theory that because of his illegitimacy . . . he would have been better not born has found almost no support in the law." *Fulton-DeKalb Hosp. Auth. v. Graves*, 252 Ga. 441, 442 (1) (314 SE2d 653) (1984); see *Williams v. State*, 223 NE2d 343, 344 (N.Y. 1966) ("Being born under one set of circumstance[s] rather than another or to one pair of parents rather than another is not a suable wrong"); *Curlender v. Bio-Science Laboratories*, 165 Cal. Rptr. 477, 486 (App. 1980) ("a cause of action based upon . . . illegitimacy contrasted with legitimacy[ ] should not be recognizable at law"). To allow a cause of action to proceed on the grounds presented would belittle his worth as a person.

Mercifully, Baby Boy C. has been adopted into another family and enjoys "every right and privilege of a biological child" of his new parents. OCGA § 19-8-19 (a) (2). He may never know the circumstances of his birth. The trial court properly granted summary judgment on the claims asserted in his behalf.

*Judgment affirmed in Case No. A97A1587. Judgment reversed in Case No. A97A1586. Andrews, C. J., Birdsong, P. J., Smith, Ruffin and Eldridge, JJ., concur. McMurray, P. J., dissents.*

McMURRAY, Presiding Judge, dissenting.

I respectfully dissent because I cannot go along with the majority's misplaced confidence on the factually distinguishable panel decision in *Cechman v. Travis*, 202 Ga. App. 255 (414 SE2d 282). The majority's holding in the case sub judice legislates more than the Code section defines and undermines the legislature's stated goal to protect "children whose health and welfare are adversely affected and further threatened by the conduct of those responsible for their care and protection." OCGA § 19-7-5 (a). Because two expert physicians, Dr. Robert Carlton Cater and Dr. David Krugman, deposed that Dr. Vance's relationship as T. R. C.'s physician (a doctor charged with the care of a 13-year-old child under foster care) imposed professional responsibility and trust upon Dr. Vance inclusive and apart from those prescribed in OCGA § 19-7-5, and because these physicians opined that Dr. Vance breached his duty by failing to report the sexual activity which resulted in T. R. C.'s pregnancy and Baby Boy C.'s birth, I believe genuine issues of material fact remain, for determination by a jury and not this Court, as to Dr. Vance's liability for failing to report the sexual contact T. R. C. endured (whether consensual or not) while the child was under *State supervised foster care.*

DECIDED DECEMBER 2, 1997 — ▮▮▮▮▮

*Jones, Cork & Miller, Thomas C. Alexander, Sharon H. Reeves,* for appellants.
*Butler & MacDougald, Larry K. Butler, Daniel MacDougald III,* for appellees.