[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 1, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-15983

_____

D. C. Docket No. 07-00095-CV-JTC-3

TERRY ANTHONY,
SARAH K. ANTHONY, individually
and on behalf of a class of
similarly situated persons,

Plaintiffs-Appellants,

versus

AMERICAN GENERAL FINANCIAL SERVICES, INC.,
formerly known as American General Finance, Inc.,
AMERICAN GENERAL FINANCIAL SERVICES, INC., (DE),
formerly known as American General Finance, Inc.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(October 1, 2009)

Before EDMONDSON and BIRCH, Circuit Judges, and HODGES,[*] District Judge.


PER CURIAM:


CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA, PURSUANT TO OCGA § 15-2-9.


TO THE SUPREME COURT OF GEORGIA AND ITS HONORABLE JUSTICES:


In this case, we must decide whether a debtor may recover notarial fees charged by a creditor in excess of the statutory maximum established by OCGA § 45-17-11(b) (2002). This case presents questions of Georgia law that we believe are appropriate for certification to the Supreme Court of Georgia.

---

[*]Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of Florida, sitting by designation.

## I. BACKGROUND

In 2002, Terry and Sarah Anthony ("the Anthonys") refinanced a mortgage loan with American General Financial Services ("American General"). The Anthonys executed a standard loan agreement specifying certain fees that they must pay as part of the transaction, including a $350.00 "notary fee." On a separate page of the loan agreement, the document states that the fees are "reasonable and necessary." Without providing notice that the maximum permissible notarial fee under section 45-17-11 is $4.00, American General collected the $350.00 from the Anthonys.

In 2007, the Anthonys filed suit against American General in United States District Court, seeking to represent a class of similarly-situated persons and alleging several claims arising under Georgia law. The Anthonys make these assertions: (1) section 45-17-11,[1] which sets the maximum fee a notary may charge

---

[1] Section 45-17-11 states, in part:
(b) It shall not be lawful for any notary public to charge a greater sum than $4.00 for each service performed. Said sum shall include a fee of $2.00 for performing the notarial act and a fee of $2.00 for an attendance to make proof as a notary public and certifying to same if such certification, which shall be issued by the clerk of superior court of the county in which the notary public was appointed or the Georgia Superior Court Clerks' Cooperative Authority, is required. Registering shall be paid for by the party who has the service performed. The fee for all official acts which the notary may perform shall be the same as those prescribed for other officers who are likewise permitted to perform them.
...
(d) A notary public shall inform the person requesting any notarial act, prior to performing the

for each notarial service at $4 and requires disclosure of the fee before performing the service, creates a private civil cause of action to recover fees paid in excess of the statutory cap; (2) by charging a notary fee in excess of the statutory maximum, American General breached its contract with the Anthonys because an illegal fee is not "reasonable and necessary"; and (3) charging an illegal fee gives rise to fraud and "money had and received" claims.

The district court granted American General's Rule 12(b)(6) motion to dismiss for failure to state a claim. About the implied cause of action, the district court concluded that, among other things, insufficient evidence of legislative intent exists to infer a civil cause of action under section 45-17-11. The district court also concluded that the contract claim was barred by Georgia's voluntary payment statute, OCGA § 13-1-13 (2002), and that the exception to that rule for fraudulent conduct did not apply because the fees were fully disclosed and the Anthonys paid out of ignorance of the law. Last, the court concluded that the Anthonys' fraud claim and money-had-and-received claim were barred by the statute of limitations because over four years had elapsed since the signing for the loan. The court rejected the Anthonys' argument that the statute of limitations was tolled due to fraud because the discrepancy in the contract provision and the statute was

---

act, the fees permitted for each act.

4

detectable at the time of formation with reasonable diligence.

## II. DISCUSSION

We have doubt about the correct application of state law in this case. The Supreme Court of Georgia may review a question of law certified by this Court when it is "determinative of the case" and there are "no clear controlling precedents in the decisions of the Supreme Court." OCGA § 15-2-9(a). Finding no clear controlling precedent, we seek your guidance on the following issues:

### A.  Applicability of Section 45-17-11 to Corporations Employing Notaries Public

The Anthonys brought an action only against American General. American General contends that as a corporation it is not subject to section 45-17-11 because that statutory framework only applies to natural persons: the actual notaries. American General mainly relies on the language of section 45-17-2, which requires, among other things, that "[a]ny individual applying for appointment to be a notary public must be . . . [a]t least 18 years old." In addition, American General contends that May v. Jones, 88 Ga. 308, 311-12 (1891) supports the proposition

5

that notaries public, when acting in their official capacity, act as public officials and not employees of a corporation.  The district court agreed with American General that the corporation and its charges are not subject to the statute, concluding that "the statute provides no indication that the legislature intended the regulations, fee limits, and criminal penalties to extend to lenders and other corporations."

The Anthonys argue that other parts of the regulatory framework specifically contemplate that lending institutions employ notaries.  See OCGA § 45-17-12 (2002) (authorizing notaries employed by certain kinds of corporations to notarize documents executed by such corporations).  In addition, they argue that the regulatory framework governs American General because section 45-17-20 imposes criminal sanctions on a "person" for violations, and OCGA 1-3-3(14) (2002) specifically includes a corporation within the definition of a person.

B. Implied Cause of Action Under Section 45-17-11

The Anthonys appeal the district court's conclusion that no private cause of action exists under section 45-17-11.  The Anthonys rely on Norris v. Sigler Daisy Corp., 260 Ga. 271 (1990), and Borison v. Christian, 257 Ga. App. 257  (2002), to support the proposition that Georgia law may imply a private cause of action to

6

recover fees paid in violation of the criminal law.  <u>Norris</u> and <u>Borison</u> respectively seem to recognize such an action in the usury and bond compensation context.

We see some merit in the claim that Georgia courts may recognize a cause of action in this case.  But, we are "reluctant to read private rights of action in state laws where state courts and state legislatures have not done so."  <u>Farlow v. Union Cent. Life Ins. Co.</u>, 874 F.2d 791, 795 (11th Cir. 1989).  This reluctance is increased where, as here, under state law "the violation of a penal statute does not automatically give rise to a civil cause of action on the part of one is who purportedly injured thereby."  <u>Murphy v. Bajjani</u>, 282 Ga. 197, 201 (2007) (internal quotation marks omitted).  Having found no applicable precedent nor indication of Georgia public policy on this specific issue, <u>see</u> <u>id.</u>, we believe the issue is one properly to be decided by Georgia's high court.

C. <u>Voluntary Payment Doctrine</u>

The district court dismissed the Anthonys' breach of contract claim.  The loan agreement specifies that American General may impose "reasonable and necessary fees for . . . notarization." The Anthonys claim that a fee charged in violation of section 45-17-11 cannot be reasonable and necessary.  American General argues, and the district court agreed, that regardless of whether there was a

7

breach, Georgia's voluntary payment statute, section 13-1-13, bars recovery.[2]

Georgia law seems clear that payments made out of ignorance of the law are subject to the voluntary payment doctrine, even when such payments exceed a statutorily imposed maximum. See Cotton v. Med-Cor Health Info. Solutions, Inc., 221 Ga. App. 609, 611-12 (1996) ("Nor is [the voluntary payment doctrine] avoided by reason of the fact that the charges were imposed on plaintiffs by defendants in contravention of a statute."). We can find no applicable precedent indicating whether the rule would apply where the person asserting the defense was arguably under an affirmative statutory duty to disclose the maximum allowable fee. See OCGA § 45-17-11(d).

D. Statute of Limitations on Fraud and Money Had and Received Claims

The Anthonys contend that American General committed fraud when American General represented that its fees were "reasonable and necessary" and failed to provide the disclosure arguably required by section 45-17-11(d); the Anthonys also assert a claim for money-had-and-received. The district court concluded that both claims were barred by the statute of limitations.

---

[2] Section 13-1-13 states, in part: Payments of claims made through ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party are deemed voluntary and cannot be recovered.

Neither party disputes that more than four years has elapsed between the execution of the loan agreement and the beginning of this lawsuit. The Anthonys contend that the limitation period was tolled due to the alleged misrepresentation and failure to make the disclosure about the maximum notary fee.

Where the "gravamen of the underlying complaint is actual fraud," Georgia law permits the tolling of the limitation period "until such fraud is discovered, or could have been discovered by the exercise of ordinary care and diligence." Hunter, Maclean, Exley & Dunn, P.C. v. Frame, 269 Ga. 844, 846-47 (1998) (internal quotation marks omitted). Contracting parties seem to be expected to "exercise ordinary diligence and use the means available to . . . verify [the] representations" made by the opposite party. See Empire Distributors, Inc. v. Hub Motors Co., 240 Ga. App. 568, 569 (1999).

The district concluded that ordinary care would have revealed the allegedly excessive fee and that the merger clause in the loan agreement foreclosed any argument that the Anthonys were prevented from reading the contract before signing it.[3] But, we are mindful that "[c]oncealment per se amounts to actual fraud when for any reason one party has a right to expect full communication of the facts from another." Woodall v. Orkin Exterminating Co., Inc., 175 Ga. App. 83, 84

_____

[3]The merger clause states that "[b]y signing below, you have read, understand and agree to the terms and conditions in this document."

9

(1985). We can find no applicable precedent indicating whether the Anthonys had a right to expect full communication in these circumstances: that is, whether or not American General was under an affirmative statutory duty to disclose the maximum allowable fee per section 45-17-11(d).

## III. CERTIFIED QUESTIONS

We certify these questions to the Supreme Court of Georgia:

(1)     Is a corporation employing notaries public to help facilitate its lending practices: A) subject directly to section 45-17-11; or B) vicariously liable for violations of section 45-17-11 by its notary employees?

(2)     If a corporation employing notaries public is subject to section 45-17-11, does a private civil cause of action arise under that section to recover notarial fees paid in excess of, and without notice of, the statutorily prescribed maximum notary fee?

(3)     If a corporation employing notaries public is subject to section 45-17-11, does the voluntary payment statute, section 13-1-13, bar contract recovery for notarial fees paid in excess of, and without notice of, the statutorily prescribed maximum notary fee when the actual fee charged was clearly specified in the contract and the contract represents that the fees are

"reasonable and necessary?"

(4)  If a corporation employing notaries public is subject to section 45-17-11, is the statute of limitations tolled on fraud and money had and received claims when notarial fees are collected in excess of, and without providing the required notice of, the statutorily prescribed maximum notary fee when the contract represents that the fees are "reasonable and necessary?"

We submit these state law questions can only be fully resolved by the Supreme Court of Georgia. In certifying the questions, we intend to restrict, in no way, the state court's consideration of the issues presented. In the effort to decide this case correctly, we ask broadly for the state court's help. "[L]atitude extends to the Supreme Court's restatement of the . . . issues and the manner in which the answers are given." Washburn v. Rabun, 755 F.2d 1404, 1406 (11th Cir. 1985). To assist the state court, the entire record in this case and the briefs of the parties are transmitted herewith.

QUESTIONS CERTIFIED.