94

## A11A1422. THOMAS v. HL-A CO., INC.

(720 SE2d 648)

BARNES, Presiding Judge.

Sonja Thomas appeals the grant of summary judgment to her former employer, HL-A Co., Inc., on her claim that HL-A improperly terminated her employment in violation of OCGA § 34-1-3 (a)[1] for attending a juvenile court proceeding. HL-A contends, however, that Thomas was not terminated in violation of OCGA § 34-1-3 (a) but because the company believed that Thomas had falsified her employment application. Because Thomas submitted sufficient evidence to show a prima facie case of retaliation, and HL-A failed to come forward with competent evidence showing a proper reason for the termination, we must reverse the trial court.

Thomas argues on appeal that the trial court erred by placing the burden of proof upon her to prove she was penalized because of her absence, and that the court erred by finding she failed to carry that burden. Thomas also contends that the trial court erred by finding that she failed to present sufficient evidence to raise a jury question as to whether HL-A violated OCGA § 34-1-3, any other law, or any public policy by terminating her employment.

1. In Georgia,

> [t]he standards applicable to motions for summary judgment are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). When a trial court rules on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion. On appeal of the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence.

(Citation and punctuation omitted.) *Overton Apparel v. Russell Corp.*, 264 Ga. App. 306, 307 (1) (590 SE2d 260) (2003). Further, summary judgments enjoy no presumption of correctness on appeal,

---

[1] OCGA § 34-1-3 (a) provides:

It shall be unlawful for any employer or the agent of such employer to discharge, discipline, or otherwise penalize an employee because the employee is absent from his or her employment for the purpose of attending a judicial proceeding in response to a subpoena, summons for jury duty, or other court order or process which requires the attendance of the employee at the judicial proceeding. It shall be unlawful for any employer or the agent of such employer to threaten to take or communicate an intention of taking any action declared to be unlawful by this subsection.

and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met. See *Chester v. Smith*, 285 Ga. 401, 401 (677 SE2d 128) (2009); *Merlino v. City of Atlanta*, 283 Ga. 186, 186 (657 SE2d 859) (2008).

Viewed in the light most favorable to Thomas as the nonmoving party, the record shows that Thomas initially worked for a temporary employment agency which placed her with HL-A in March 2007, then became an HL-A employee in July 2007. During the hiring process, Thomas completed an application affirming she had no relatives employed at HL-A. HL-A had an anti-nepotism policy which would have prevented her employment if she were married at that time to another HL-A employee. Thomas was living with another HL-A employee, Joshua Smith, when she was hired.

Thomas took unpaid personal days to attend juvenile court hearings involving Smith's daughter in Tennessee in February and June 2009, pursuant to witness subpoenas. A week after informing her supervisor that the Tennessee case had not been resolved, HL-A determined that Thomas's latest absence was not excused and planned to count the absence as unexcused. Under HL-A policy, an employee with a certain number of unexcused absences was subject to termination. Thomas protested that her absence should be excused because she was attending a court hearing pursuant to a witness subpoena. The next day, HL-A fired Thomas, who sued for damages arising from a violation of OCGA § 34-1-3 (a).

HL-A responded that Thomas was fired for providing false information on her job application by not disclosing that she was married to Smith. HL-A contends that it reasonably believed Thomas was married to Smith because Smith had completed several work-related forms when hired in 2003 listing Thomas as his spouse and subsequently obtained medical insurance for her as his spouse. Thomas contends, however, that she did not marry Smith until October 14, 2009, four months after she was fired, and submitted a copy of her marriage certificate as proof. Thomas argues that she was fired because she protested being penalized for her absence while attending a judicial proceeding pursuant to a subpoena.

The essential rules for motions for summary judgment are codified at subsections (a) through (c) of OCGA § 9-11-56. Parties prosecuting or defending claims may move for summary judgment, with or without supporting affidavits. Then, summary

> judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

OCGA § 9-11-56 (c).

2. Our legislature created a limited number of " 'public policy' exceptions to the proposition that the employment of an at-will employee can be terminated for any reasons whatsoever or for no reason at all." *Borden v. Johnson*, 196 Ga. App. 288, 289 (1) (395 SE2d 628) (1990) (no exception for employee fired due to pregnancy). Those legislative exceptions include OCGA § 34-1-3, which authorizes an employee to recover damages if discharged for attending a judicial proceeding in response to a court order. Id. at 290 (1). See also *Reilly v. Alcan Aluminum Corp.*, 272 Ga. 279, 280 (1), n. 7 (528 SE2d 238) (2000) (OCGA § 34-1-2 prohibits firing someone due to age, though it allows only criminal sanctions, not a civil cause of action).

HL-A argues that the subpoena was not personally served on Thomas as required by Tennessee law, and therefore, because Thomas's attendance at court was not "required," the statute did not protect her for her absence from work. The dissent agrees with that proposition, which would require a person receiving a subpoena to engage legal counsel to research its validity before she could rely on the protections of OCGA § 34-1-3 and attend court. An equally unpalatable consequence for a person served with an apparently valid subpoena would be to ignore the subpoena's command to appear and incur the possibility of a contempt citation or even an arrest. We disagree that the plain language of the statute requires an employee to conduct such an inquiry.

In 1995, the Attorney General of the State of Georgia issued an opinion advising that OCGA § 34-1-3 applies to Georgia employees who are "involved in judicial proceedings" in states other than Georgia. 1995 Op. Atty. Gen. 95-13, 1995 Ga. AG LEXIS 19. In the opinion, the attorney general determined that

> a primary purpose of OCGA § 34-1-3 appears to be to protect Georgia employees. The legislature chose to place this provision in the portion of the Code relating to labor relations and to give employees a cause of action against employers. In light of this obvious intent, there is no sound reason to construe the term "judicial proceedings" to only mean "judicial proceeding in Georgia" and thereby leave some Georgia employees who are subject to compulsory process unprotected.

The crux of the issue is whether the statute requires the employee to prove that the court order or subpoena was ultimately enforceable, or whether it is sufficient that the document was facially valid such that a reasonable employee would have construed it as

mandating compliance. As the statute itself does not resolve this issue, we apply the interpretation consistent with the public policy and intent behind the statute.

In the only reported appellate opinion applying OCGA § 34-1-3, we held that an employee who was fired for attending a juvenile court proceeding with her son was entitled to unemployment benefits, even though the hearing officer found that she had sufficient previous attendance problems to justify her termination. *Glover v. Scott*, 210 Ga. App. 25, 25-26 (435 SE2d 250) (1993) (employee's attendance as parent was compulsory). We noted that "[t]o hold otherwise would allow employers to flout the letter and spirit of OCGA § 34-1-3 (a) and to penalize an employee for attending a judicial proceeding by claiming the penalty or termination was for some other infraction or previous work absence." Id. at 26.

Although the employer argues that the Tennessee subpoena commanding Thomas to appear in court was not properly served and therefore was not compulsory, the subpoena was facially valid. Further, the statute only provides that a subpoena "require[ ] the attendance of the employee at the judicial proceeding" to bestow a cause of action upon the employee for termination resulting from that court appearance. OCGA § 34-1-3 (a). As the statute's primary purpose is to protect Georgia employees, it would be unreasonable to apply its protection only after legal analysis determined that the subpoena was enforceable. And while we held in *Carr v. Farmer*, 213 Ga. App. 568 (445 SE2d 350) (1994), that a Georgia superior court cannot order a psychiatric institution to comply with a subpoena duces tecum issued by an Alabama court, that case involved federally protected medical records involving substance abuse, an issue different from the one before us here. Additionally, although the employer argues that the Tennessee subpoena had no legal effect, one of the cases it cites in support of that proposition involved personal jurisdiction over a foreign corporation and is inapplicable. *B & D Fabricators v. D. H. Blair Investment Banking Corp.*, 220 Ga. App. 373 (469 SE2d 683) (1996).

Finally, the attendance rules in the employer's handbook did not even comply with OCGA § 34-1-3, as they stated somewhat confusingly that an employee is only protected for work absences due to a "court required appearance[, . . .] defined as: [Employee] is not a named party in the proceedings; [employee] is accompanying a minor child or stepchild who has been subpoenaed to testify as a witness." The statute's protection is not limited to employees accompanying a minor child subpoenaed to testify.

Attendance at judicial proceedings is one of the very few protections an at-will employee has against being fired. The fact that Thomas was questioned about her application the same day she

showed her employer a copy of OCGA § 34-1-3 and forced it to back down on its attendance policy, then fired within days, may alone be sufficient to entitle her to a jury trial. While Georgia courts have not addressed the burden of proof in an action brought under OCGA § 34-1-3, under federal law "[t]he general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Brungart v. BellSouth Telecomms.*, 231 F3d 791, 798-799 (11th Cir. 2000) (no prima facie case of retaliatory termination in violation of Family Medical Leave Act because plaintiff failed to show that the supervisor who fired her knew she had applied for FMLA leave).

3. Further, HL-A did not support its motion for summary judgment with affidavits, but instead submitted "declarations under penalty of perjury" from its human relations manager and assistant human relations manager to establish the central facts in support of its assertion that Thomas was fired because she falsified her employment application. This evidence, however, is not authorized in Georgia. In addition to the other items mentioned in OCGA § 9-11-56 (c), our law allows motions for summary judgment to be supported and defended with affidavits, and our law is very specific about what the affidavits must contain.

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in the evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. All affidavits shall be filed with the court and copies thereof shall be served on the opposing parties.

OCGA § 9-11-56 (e). In addition, our law is also definite on what constitutes an affidavit.

> A signed statement of facts, purporting to be the statement of the signer, followed by the certificate of an officer, authorized to administer oaths that it was sworn to and subscribed before him, is a lawful affidavit. In the absence of a valid jurat, a writing in the form of an affidavit has no force, no validity, amounts to nothing, when standing alone, or when construed in connection with other evidence. To

make a valid affidavit the affiant must swear to it, and the fact of his swearing must be certified by a proper officer. In order to make an affidavit there must be present the officer, the affiant, and the paper, and there must be something done which amounts to the administration of an oath.

(Citation and punctuation omitted.) *Harvey v. Kidney Center of Central Ga.*, 213 Ga. App. 319, 320 (444 SE2d 590) (1994). The declarations under penalty of perjury submitted by HL-A do not meet this test. The HL-A managers did not swear to the truths of their statements, nor were their swearings certified by a proper officer. Consequently, their declarations had no force, no validity, and amounted to nothing, when standing alone, or when construed in connection with other evidence.

A defendant on summary judgment may point to an absence of evidence in the record supporting the plaintiff's claim, and the plaintiff must then respond with specific evidence supporting her claim. Here, the plaintiff presented competent circumstantial evidence from which a jury could infer that she was fired in retaliation for arguing to management that she was statutorily entitled to be excused for her absence because she was attending court pursuant to a witness subpoena. See *Jones v. Board of Regents &c. of Ga.*, 262 Ga. App. 75, 81 (4) (585 SE2d 138) (2003) (plaintiff presented sufficient circumstantial evidence for a jury to determine whether he was terminated in reprisal for whistleblowing activity). HL-A then failed to come forward with competent evidence showing a proper reason for the termination. Therefore, the trial court erred by granting HL-A's motion for summary judgment.

*Judgment reversed. Miller, P. J., Phipps, P. J., Ellington, Adams and Doyle, JJ., concur. Blackwell, J., dissents.*

BLACKWELL, Judge, dissenting.
Because OCGA § 34-1-3 (a) does not forbid the discharge or discipline of an employee who, although not compelled to do so, misses work voluntarily to attend a judicial proceeding, I respectfully dissent. No one disputes that, when we construe a statute, we must search "diligently for the intention of the General Assembly." See OCGA § 1-3-1 (a). But our search for the intent of the legislature always must begin with the words of the statute, and if those words are clear and unambiguous, it also must end there, see *Strength v. Lovett*, 311 Ga. App. 35, 43 (2) (a) (714 SE2d 723) (2011), because, as we have explained before, we always must presume that the General Assembly meant what it said and said what it meant. *Northeast Atlanta Bonding Co. v. State*, 308 Ga. App. 573, 577 (1) (707 SE2d 921) (2011). This is especially true when we are construing a statute

that puts limits on the prerogative of an employer to discharge or discipline an at-will employee, for the common law recognizes no such limits, see *Borden v. Johnson*, 196 Ga. App. 288, 289-290 (1) (395 SE2d 628) (1990), and we must strictly construe statutes in derogation of the common law. See *Brookfield Country Club, Inc. v. St. James-Brookfield, LLC*, 287 Ga. 408, 411 (1) (696 SE2d 663) (2010). By its plain terms, OCGA § 34-1-3 (a) forbids the discharge or discipline of an employee for an absence only when the employee is absent "for the purpose of attending a judicial proceeding in response to a subpoena, summons for jury duty, or other court order or process *which requires the attendance of the employee at the judicial proceeding.*" (Emphasis supplied.) So, unless an employee is *required* to attend a judicial proceeding, OCGA § 34-1-3 (a) does not forbid her discharge or discipline for having missed work to attend it.[2]

Sonja Thomas missed work to attend a juvenile court proceeding in Tennessee, having received a subpoena issued by the authority of a Tennessee court. But Thomas is a Georgia resident with no apparent connection to Tennessee that would subject her person to the jurisdiction of its courts, and she apparently was served with the subpoena by mail in Georgia. Consequently, the subpoena did not require Thomas to attend the hearing or, for that matter, to do anything at all,[3] something that neither Thomas nor the majority disputes. For this reason, OCGA § 34-1-3 (a) simply has no application in this case.

Rather than applying the statute as written, however, the majority rewrites it to forbid the discharge or discipline of an employee who is absent from work "for the purpose of attending a judicial proceeding in response to a subpoena, summons for jury duty, or other court order or process which [reasonably appears on its face to be valid and purports to require] the attendance of the

---

[2] My understanding of the statute is consistent not only with its plain terms, but also with our application of the statute in *Glover v. Scott*, 210 Ga. App. 25 (435 SE2d 250) (1993). In *Glover*, we said that the statute prohibited the termination of an employee who attended a juvenile court hearing that, the hearing officer below had found, the employee was legally compelled to attend. 210 Ga. App. at 25 ("The hearing officer . . . found that as a parent [the employee] had to appear with her son at juvenile court."). In addition, my understanding is consistent with the opinion of our Attorney General that the statute is intended to protect employees "who are subject to compulsory process." 1995 Op. Atty. Gen. 95-13. This case is readily distinguishable from the circumstances addressed by the Attorney General, which involve a resident of another state who is employed in Georgia and is summoned to appear in a judicial proceeding in the state in which the employee resides, a summons by a court that unquestionably would have jurisdiction of the person of the employee.

[3] Even if Thomas were subject to the jurisdiction of the Tennessee courts, Tennessee law only authorizes the service of a subpoena for attendance at a hearing or trial "at any place within the state [of Tennessee]." Tenn. R. Civ. P. 45.05 (1).

employee at the judicial proceeding."[4] Perhaps it is, for the reasons the majority gives, good policy to extend the protection of the statute so far, but we are supposed to concern ourselves with law and leave questions of policy to the General Assembly. See *Robinson v. Boyd*, 288 Ga. 53, 56 (2) (701 SE2d 165) (2010); *Commonwealth Investment Co. v. Frye*, 219 Ga. 498, 499 (134 SE2d 39) (1963). We have no authority to "rewrite statutes to promote policies that are not expressed in that legislation," *Anthony v. American Gen. Financial Svcs.*, 287 Ga. 448, 450 (1) (a) (697 SE2d 166) (2010), and because that is precisely what the majority does today, I respectfully dissent.

DECIDED NOVEMBER 30, 2011 

*Richard O. Samms*, for appellant.
*Burr & Forman, John O. Sullivan, Ashby L. Kent*, for appellee.

---

[4] Although this case involves a short absence from work to attend a court hearing in Tennessee, the statute is not limited to short absences, nor is it limited to absences to appear only in a court in Georgia or a neighboring state. So, under the majority's interpretation of the statute, a Georgia resident employee could be excused from work to voluntarily attend judicial proceedings for an indefinite period of time in, for instance, Kansas, Hawaii, the Kingdom of Cambodia, or the Principality of Liechtenstein, so long as the employee had been handed some piece of paper that, on its face, reasonably appears to be a valid subpoena issued by the authority of some judicial tribunal somewhere in the world. I cannot believe that the General Assembly intended any such thing when it enacted OCGA § 34-1-3 (a), and the plain terms of the statute certainly do not suggest that it so intended.